DECISION
{¶ 1} In this original action, relator, Rodney Juilfs, seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his application for temporary total disability ("TTD") compensation. Relator was denied compensation on the grounds that he voluntarily abandoned his employment with respondent J. Daniel Co., Inc. We grant the requested writ for the following reasons.
 {¶ 2} When relator began his employment with respondent in November 2004, he was provided with a copy of the Policy and Procedural Manual. The manual required in pertinent part, that, if involved in a motor vehicle accident, the employee must immediately notify his foreman or superintendent. Relator was then required to sign a form stating:
I hereby and acknowledge that I have read and fully understand Reporting of ALL Accidents/Incidents is to be done" IMMEDIATELY". Not doing so will result in disciplinary action, suspension without pay And or TERMINATION.
(Policy and Procedural Manual, at 22.)
 {¶ 3} On January 24, 2005, relator was involved in a motor vehicle accident while making a delivery for respondent. Relator completed his delivery and then notified respondent approximately 30 minutes after the accident occurred. Relator went to Dr. Randall J. Fick, who certified relator for TTD compensation from January 25 through May 15, 2005 for cervical strain and thoracic sprain.
 {¶ 4} On January 26, 2005, relator filed an application with the Ohio Bureau of Workers' Compensation ("BWC") to allow his claim for TTD compensation for cervical strain and thoracic sprain. The BWC sent a letter to respondent the same day to certify or reject relator's claim. On January 31, 2005, respondent replied, by refusing to certify relator's claim on the grounds that he failed to follow proper procedure to report the accident and was subsequently terminated on January 25, 2005. Regardless, on February 3, 2005, the BWC issued an order certifying relator's claim.
 {¶ 5} Respondent appealed the BWC's order allowing relator's claim. Respondent's appeal and relator's application for TTD compensation were heard by a district hearing officer ("DHO") on March 16, 2005. Based upon the medical reports submitted by Dr. Fick, the DHO granted relator's claim and ordered that he be paid TTD compensation.
 {¶ 6} Respondent appealed from the DHO's order. In its appeal, respondent submitted as evidence the Policy and Procedure Manual and the forms signed by relator, which outlined respondent's policy for reporting accidents and relator's understanding of that policy. Respondent also submitted a report by Daniel Derenski, detailing the accident and the reasons for terminating relator's employment based upon his failure to follow procedure.
 {¶ 7} Respondent's appeal was heard by a staff hearing officer ("SHO") on April 28, 2005. The SHO granted relator's claim for allowed conditions but denied his application for TTD compensation. The SHO noted relator's failure to comply with respondent's procedures for reporting an accident. More specifically, the SHO noted that relator waited 30 minutes to report the accident to his superintendent and therefore violated respondent's rule requiring that accidents be immediately reported. The SHO relied upon State ex rel. Louisiana-PacificCorp. v. Indus. Comm. (1995), 72 Ohio St.3d 401, and found that "the injured worker voluntarily abandoned his position by his actions by violating the company's work policy." Therefore, by reporting the accident 30 minutes after it occurred, the SHO found relator violated the company requirement that accidents be reported immediately. By doing so, relator voluntarily abandoned his employment and thus, was not entitled to TTD compensation.
 {¶ 8} Relator filed a mandamus action with this court claiming that the commission abused its discretion by denying his claim for TTD compensation due to violation of a work rule because he failed to immediately report the accident. Pursuant to Civ.R. 53(C) and Loc.R. 12(M), this matter was referred to a magistrate of this court.
 {¶ 9} The magistrate rendered her decision on January 26, 2006. (Attached as Appendix A.) Based upon a review of the case law, respondent's policies and the relevant facts of this case, the magistrate concluded that the commission abused its discretion by denying TTD compensation based upon relator's failure to immediately notify his superintendent of the accident. Claims for TTD compensation turn on two factors: (1) aspects of the injury; and (2) other circumstances that may have prevented the claimant from returning to work. State ex rel. Ashcraft v.Indus. Comm. (1987), 34 Ohio St.3d 42. This case turns upon the second factor. The magistrate noted that only voluntary abandonment falls under the second part of the test to preclude TTD compensation pursuant to State ex rel. Rockwell Internatl.v. Indus. Comm. (1988), 40 Ohio St.3d 44. One such method of voluntary abandonment is firing if the employee violated a work rule that satisfies the three-part test in Louisiana-Pacific,
supra. The test requires that the rule: (1) clearly define the prohibited conduct; (2) has been identified by the employer as a dischargeable offense; and (3) was known to the employee.
 {¶ 10} The magistrate noted that several reasons were given for relator's termination; only one of which was a violation of a written work rule — failure to immediately report. The magistrate found that the written rule did not comply with the test set forth in Louisiana-Pacific because the rule did not clearly define the prohibited conduct; it was not clear what was meant by the term "immediately." Therefore, it was an abuse of discretion for the commission to find that relator voluntarily abandoned his employment, thus precluding TTD compensation, when he reported his accident 30 minutes after it occurred instead of "immediately." The magistrate recommended that we grant relator's request for a writ of mandamus and order the commission to rehear the case and determine whether relator is entitled to TTD compensation based upon the medical evidence. The commission filed its objections to the magistrate's decision on February 6, 2006.
 {¶ 11} In order for us to issue a writ of mandamus, relator must show that it has a legal right to relief from the determination of the commission and that the commission has a legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. For this court to find such a right, relator must show that the commission abused its discretion by entering an order not supported by the evidence on record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. However, where even some evidence on record supports the commission's order, it must be held that there was no abuse of discretion and mandamus may not be granted. State ex rel.Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56.
 {¶ 12} In this case, our relevant inquiry is whether relator's violation of the rule to immediately report an accident is sufficient under Louisiana-Pacific to constitute a voluntary abandonment. Only the first part of the Louisiana-Pacific test is relevant to this inquiry. Was the prohibited conduct clearly defined?
 {¶ 13} The commission and respondent both contend that, by waiting 30 minutes to report his accident instead of doing so "immediately," relator committed a dischargeable offense. The magistrate countered that this rule was not clearly defined underLouisiana-Pacific because the meaning of the term "`immediate' is not necessarily so clearly defined by the manual so that the violation of this policy should result in denial of TTD compensation to relator." (Magistrate's decision, at 11.) We agree.
 {¶ 14} Respondent notes that ambiguous terms should be given their ordinary meaning and that "immediate" does not allow for a 30 minute time interval. Respondent further contends that adoption of the magistrate's decision would stripLouisiana-Pacific of all meaning. However, we hold that, in light of the circumstances, to not adopt the magistrate's decision would have the same effect. Black's Law Dictionary defines "immediate" as "occurring without delay; instant." We find that requiring an employee to report an accident "instantly" and "without delay" to be both impossible and unreasonable.
 {¶ 15} The magistrate correctly noted the Supreme Court of Ohio's holding in State ex rel. Smith v. Superior's Brand Meats,Inc. (1996), 76 Ohio St.3d 408 that, in cases where TTD compensation is at issue, the surrounding circumstances must be carefully considered. Here, relator completed the delivery task assigned to him by respondent and then reported the accident to respondent. This took all of 30 minutes. We find that it is reasonable to conclude, under these circumstances, that relator notified his employer immediately, did not violate a written work rule, and did not voluntarily abandon his employment. There is no evidence to conclude otherwise.
 {¶ 16} Pursuant to Civ.R. 53(E)(4), we have conducted a full review of the magistrate's decision, the objections submitted by respondent and the commission, and all submitted memoranda. For the reasons stated, we overrule the objections and adopt the decision of the magistrate. Relator's request for a writ of mandamus is granted.
Objections overruled; writ granted.
Klatt, P.J., and Brown, J., concur.
 (APPENDIX A) IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Rodney L. Juilfs, : Relator, : v. : No. 05AP-887 J. Daniel Co., Inc. and : (REGULAR CALENDAR) Indus[trial] Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on January 27, 2006 Young, Reverman Mazzei, Co., L.P.A., Martin M. Young,Stephen S. Mazzei and Thomas M. Farrell, Jr., for relator.
Becker Cade, and Howard D. Cade, III, for respondent J. Daniel Company, Inc.
Jim Petro, Attorney General, and Charissa D. Payer, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 17} Relator, Rodney L. Juilfs, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's request for temporary total disability ("TTD") compensation on the basis that relator voluntarily abandoned his position of employment with respondent J. Daniel Company, Inc. ("employer"), by violating the employer's work policy.
Findings of Fact:
 {¶ 18} 1. On January 24, 2005, while making a delivery for the employer, relator was involved in a motor vehicle accident.
 {¶ 19} 2. On January 26, 2005, relator filed an application for workers' compensation benefits with the Ohio Bureau of Workers' Compensation ("BWC") requesting that his claim be allowed for sprains of the neck and thoracic region.
 {¶ 20} 3. On that same day, January 26, 2005, the BWC mailed a letter to the employer indicating that, as an employer, they had the right to certify or reject relator's claim.
 {¶ 21} 4. Rita L. Collins, the payroll/safety administrator for the employer, faxed the employer's response to the BWC on January 31, 2005. The employer denied certification of relator's claims for the following stated reason: "Mr. Juilfs did not follow Co. Rules + Regulations on Reporting of his accident. Mr. Juilfs mentioned nothing of being hurt + was sent to [illegible] for drug test day of accident. Didn't say anything to Dr. Le about any injury." Ms. Collins indicated that relator was terminated on January 25, 2005.
 {¶ 22} 5. By order mailed February 3, 2005, the BWC allowed relator's claim for the following conditions: "cervical strain; thoracic sprain."
 {¶ 23} 6. Relator's treating physician, Randall J. Fick, D.C., certified a period of TTD from January 25, 2005 through an estimated return-to-work date of May 15, 2005.
 {¶ 24} 7. The employer's appeal from the BWC order allowing relator's claim and relator's motion for TTD compensation came before a district hearing officer ("DHO") on March 16, 2005. The DHO determined that relator was injured during the course of his employment and that his claim should be allowed for sprain of neck and sprain thoracic region. Furthermore, the DHO ordered the payment of TTD compensation from January 25 through March 16, 2005, and to continue based upon the submission of medical evidence. The DHO based this determination upon the January 25, February 15 and February 18, 2005 medical reports of Dr. Fick.
 {¶ 25} 8. The employer appealed from the DHO's order and submitted the following evidence in support of the assertion that relator had been terminated from his employment and that the termination precluded the payment of TTD compensation. Specifically, the employer submitted a copy of its Policy and Procedure Manual which was given to relator on November 8, 2004. That manual provides, in relevant part, as follows:
Discharge for Misconduct
It is the policy of J. Daniel Company to expect all employees to abide by certain work rules of general conduct and performance at all times. The regulations governing employee conduct and responsibilities have been established in the best interest of the company, its employees, and its customers/clients.
Accordingly, a violation of these regulations constitutes mis-conduct on the part of the employee and appropriate dis-ciplinary action will be initiated. These rules are guidelines only and are not all inclusive. Disciplinary action may con-clude, but is not limited to, verbal reprimand, written notice, suspension from work without pay, and immediate termination of employment. Management reserves the right to terminate or discipline any employee as the company, in its discretion, considers necessary in individual circumstances.
In the event an employee is suspended from work for disciplinary reasons, benefits will not accrue nor will benefits be recoverable during the suspension period.
EXAMPLES OF MISCONDUCT:
The following are only examples of misconduct for which an employee may be subject to discipline and these examples do not constitute a complete list of the circumstances for which discipline will be warranted.
* * *
• Violation of company policies.
* * *
• Failure to report personal injury resulting from an on-the-job work situation.
 {¶ 26} The employer also submitted two additional forms also received by relator on November 8, 2004, which specifically address accidents. Those documents provide the following additional relevant information:
Reporting of All Accidents/incidents
When you are involved in any type of ACCIDENT/INCIDENT you are to Contact your Foreman "IMMEDIATELY". If you can not reach your foreman you are to contact your super-intendent, Daniel Derenski or myself (Rita Collins). Every employee plays an important part in preventing any accident/-incident and is expected to cooperate fully in the procedures.
AUTOMOBILE ACCIDENTS
There will be a packet for auto accidents in every vehicle with the procedures to follow.
Examples are:
A. Reporting all unsafe conditions of vehicles to maintenance department.
B. Promptly reporting any and all accidents to your foreman.
C. Practice defensive driving at all times.
* * *
I hereby and acknowledge that I have read and fully understand Reporting of ALL Accidents/Incidents is to be done" IMMEDIATELY". Not doing so will result in disciplinary action, suspension without pay And or TERMINATION.
(Emphasis sic.)
 {¶ 27} 9. The employer also submitted the January 25, 2005 report prepared by Daniel Derenski relating to relator's accident, and also prepared an affidavit relative to his report wherein he averred the following:
2. On January 24, 2005, the claimant was involved in an accident while driving a company vehicle. After investigation, I determined that claimant was not being truthful about how the accident occurred, or his actions afterwards. Specifically:
(a) The claimant did not report the accident in a timely manner.
(b) The damage done to the vehicle did not match claimant's report how the accident occurred.
(c) Claimant did not use the accident kit which was in the glove box of the company vehicle he was using at the time to immediately take photographs of the accident scene.
(d) Claimant did not inform the property owners of the damage done, and lied about trying to speak to them.
3. On January 25, 2005, I completed a write-up of the accident report, and also wrote the claimant up for violation of written company policy and terminated his employment at that time.
 {¶ 28} 10. The matter was heard before a staff hearing officer ("SHO") on April 28, 2005, and resulted in an order granting relator's claim for the allowed conditions but denying the requested period of TTD compensation for the following reasons:
The Staff Hearing Officer finds that the injured worker was hired by the company on 11/09/2004. The Staff Hearing Officer finds that the injured worker received the J. Daniel and Company policy and procedural manual on 11/08/2004 and he signed his name acknowledging receipt of those materials.
The Staff Hearing Officer finds that following the vehicle accident on 01/24/2005, the injured worker did not comply with the employer's vehicle use agreement form and their accident reporting procedures.
The Staff Hearing Officer finds that the injured worker did not immediately report this accident to his superintendent. The Staff Hearing Officer further finds that the injured worker did not follow the company's accident reporting procedures.
The Staff Hearing Officer finds that the injured worker testified that he reported the accident 30 minutes after it happened. The Staff Hearing Officer finds that the injured worker believed the accident happened at 1:00 o'clock. The Staff Hearing Officer finds that the injured worker testified that he completed the delivery that he was making, traveled back to the shop and then called in reporting the accident.
The Staff Hearing Officer finds that the injured worker did not immediately report this accident. The Staff Hearing Officer further finds that the injured worker did not follow the company's accident reporting guidelines. The Staff Hearing Officer finds that the injured worker did not use the accident kit located in the trucks to take photographs of the accident scene. The Staff Hearing Officer finds that the company policy handbook states the reporting of all accidents is to be done immediately. The Staff Hearing Officer finds the injured worker signed for company policies acknowledging that he read and understood the reporting of all accidents and incidents was to be done immediately. Further, the Staff Hearing Officer finds that the policy further reads that "not reporting the accident immediately will result in disciplinary action, suspension without pay and/or termination."
The Staff Hearing Officer finds that the injured worker violated a known written work rule for which he was terminated. The Staff Hearing Officer finds, based upon the [State ex rel.Louisiana-Pacific Corp. v. Indus. Comm. (1995),72 Ohio St.3d 401] [c]ase, that the injured worker voluntarily aban-doned his position by his actions by violating the company's work policy. Therefore, temporary total is not appropriate in this claim.
This order is based upon the medical report of Dr. Fick as well as the employer's handbook, the injured worker's signing receipt of this information as well as the testimony of Daniel Deranski [sic] as well as the affidavit of Daniel Deranski [sic] on file.
 {¶ 29} 11. Relator appealed arguing that the commission misapplied the law from State ex rel. Louisiana-Pacific Corp. v.Indus. Comm. (1995), 72 Ohio St.3d 401, by finding that relator failed to immediately report the accident when the evidence in the record demonstrated that relator had reported the accident within 30 minutes of its occurrence.
 {¶ 30} 12. Relator's appeal was refused by order of the commission mailed June 3, 2005.
 {¶ 31} 13. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 32} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 33} TTD compensation awarded pursuant to R.C. 4123.56 has always been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. State ex rel. Ramirez v. Indus. Comm. (1982),69 Ohio St.2d 630. Where an employee's own actions, for reasons unrelated to the injury, preclude him from returning to his former position of employment, he is not entitled to TTD benefits, since it is the employee's own actions rather than the injury, that precludes return of the former position. See Stateex rel. Jones Laughlin Steel Corp. v. Indus. Comm. (1985),29 Ohio App.3d 145. When determining whether a claimant qualifies for TTD compensation, the court utilizes a two-part test. The first part of the test focuses on the disabling aspects of the injury. The second part of the test determines if there are any factors, other than the injury, which would prevent claimant from returning to his former position of employment. See State exrel. Ashcraft v. Indus. Comm. (1987), 34 Ohio St.3d 42. However, only a voluntary abandonment precludes the payment of TTD compensation. State ex rel. Rockwell Internatl. v. Indus. Comm.
(1988), 40 Ohio St.3d 44. As such, voluntary abandonment of the former position of employment can, in some instances, bar eligibility for TTD compensation.
 {¶ 34} A firing can constitute a voluntary abandonment of the former position of employment when the firing is a consequence of behavior which the claimant willingly undertook. See State exrel. Watts v. Schottenstein Stores Corp. (1993),68 Ohio St.3d 118. The rationale for this is that a person is deemed to tacitly accept the consequences of their voluntary acts.
 {¶ 35} In Louisiana-Pacific, the court characterized a firing as "voluntary" where that firing is generated by the employee's violation of a written work rule or policy which: (1) clearly defined the prohibited conduct; (2) had been previously identified by the employer as a dischargeable offense; and (3) was known or should have been known to the employee.
 {¶ 36} In State ex rel. Superior's Brand Meats, Inc. v.Indus. Comm. (1997), 76 Ohio St.3d 409, 411, the Supreme Court of Ohio stated as follows:
* * * [W]e recognize the great potential for abuse in allowing a simple allegation of misconduct to preclude temporary total disability compensation. We therefore find it imperative to carefully examine the totality of the circumstances when such a situation exists.
 {¶ 37} Later, in State ex rel. McKnabb v. Indus. Comm.
(2001), 92 Ohio St.3d 559, the issue concernedLouisiana-Pacific's reference to a written work rule or policy. The court stated that written work rules do more than just define prohibited conduct; they set forth a standard of enforcement as well. Although the commission argued that there are some common sense infractions which do not need to be reduced to writing in order to foreclose the payment of TTD compensation if violation triggers termination, the court disagreed. As the court noted, written policies help prevent arbitrary sanctions and are especially important when dealing with employment terminations which may block eligibility for certain benefits. As such, an employer may have a valid reason for terminating an employee; however, unless the requirements of Louisiana-Pacific are met, that termination will not preclude the payment of TTD compensation.
 {¶ 38} In the present case, the commission determined that relator was precluded from receiving TTD compensation for two reasons: (1) relator reported the accident 30 minutes after it occurred and not immediately after it occurred; and (2) relator failed to follow the company's accident reporting guidelines when he failed to take photographs of the accident scene.
 {¶ 39} Upon review of the written employment guidelines, the magistrate notes that relator was informed that, in the event he was involved in any type of accident, he was to report the accident "immediately." Furthermore, relator was notified that every vehicle contains a packet for auto accidents with the procedures to be followed by employees. (The employer did not submit a copy of the packet present in their vehicles or the specific information contained within that packet except to say that that packet reminds the employee to immediately report the accident.) The guidelines do indicate that failure to report an accident immediately will result in disciplinary action, suspension without pay, and/or termination. While the record does not contain a copy of any records terminating relator, the record does contain the January 31, 2005 letter from the employer notifying the BWC that it would not certify relator's claim. As stated previously in the findings of facts, the employer provided the following explanation for why relator's claim would not be certified: "Mr. Juilfs did not follow Co. Rules + Regulations on Reporting of his accident. Mr. Juilfs mentioned nothing of being hurt + was sent to [illegible] for drug test day of accident. Didn't say anything to Dr. Le about any injury." Further, the record contains a January 25, 2005 report prepared by Daniel Derenski as well as his April 28, 2005 affidavit. Mr. Derenski indicated that relator was terminated for the following reasons: relator's failure to timely report the accident; damage done to the vehicle did not match relator's report about the accident; failure to use the accident kit to take photographs; and not informing the property owners of the damage done and lied about trying to speak to them. Lastly, Ex. 9 provides the following reason for relator's termination: "Failure to follow company policies. Auto accident."
 {¶ 40} Of the four reasons given for relator's termination, this magistrate finds that the employer identified valid reasons to terminate relator. However, only one of those four stated reasons is actually listed in the employer's policy manual as a rule, the violation of which may result in termination: failure to immediately report an accident. The fact that relator failed to take pictures of the accident scene is not a written work rule, the violation of which could result in termination and it was an abuse of discretion for the commission to rely upon that violation to deny relator TTD compensation. Further, relator reported the accident within 30 minutes, was seen by Dr. Fick on the same day as the accident, and notified the employer of his injuries the next day. The magistrate does not see, from these facts, that relator violated the policy relative to reporting his injuries.
 {¶ 41} In the present case, the magistrate finds that the commission did abuse its discretion by denying relator's request for TTD compensation based upon his failure to "immediately" notify his supervisor of the automobile accident. The record indicates that relator notified his supervisor 30 minutes after the accident occurred. While 30 minutes after an event is not "immediate," the magistrate finds that the term "immediate" is not necessarily so clearly defined by the manual so that the violation of this policy should result in denial of TTD compensation to relator. Did the employer have a valid reason to terminate relator? Undoubtedly, yes. However, based upon the record, the magistrate believes that the rationale expressed by the Supreme Court of Ohio in Superior's Brand Meats indicating that, given the great potential for abuse, it is imperative to carefully examine the totality of the circumstances before determining whether or not a valid termination should preclude the payment of TTD compensation, leads to a conclusion contrary to the commission's.
 {¶ 42} In the present case, the magistrate finds that it was an abuse of discretion to find that the termination of relator for his failure to "immediately" report the accident when the evidence in the record indicates that he reported the accident within 30 minutes of its occurrence constitutes a voluntary abandonment of his employment precluding the payment of TTD compensation. This written work rule does not meet the test set forth in Louisiana-Pacific requiring that the rule "clearly" define the prohibited conduct. Further, there is no evidence that the employer was in any way prejudiced by relator's failure to report the accident sooner and finding that 30 minutes after the accident is not unreasonable, the magistrate finds that, although the employer had a valid reason to terminate relator from his employment, that termination should not have precluded the payment of TTD compensation if the commission finds relator's medical evidence to support that determination. Perhaps, if the record would have shown that the vehicles are equipped with communication devices specifically to enable the drivers to "immediately" report an accident, the result would have been different.
 {¶ 43} Based on the foregoing, it is this magistrate's conclusion that relator has demonstrated that the commission abused its discretion by denying his application for TTD compensation on the basis that he had voluntarily retired from his employment after violating a written work rule which clearly defined the prohibited conduct and clearly set forth the consequences, and this court should issue a writ of mandamus ordering the commission to rehear this matter and determine whether or not relator has submitted medical evidence sufficient to support his request for TTD compensation.